JAMAL SPRYE,
4 Bykes Court
Baltimore, MD 21206,

*For himself and on behalf of all others
similarly situated,*

                  *Plaintiffs,*

v.

ACE MOTOR ACCEPTANCE CORP.
c/o National Registered Agent, Inc. of Md.
351 W. Camden Street
Baltimore, MD 21201

                  *Defendant.*

IN THE

CIRCUIT COURT

FOR

MONTGOMERY COUNTY, MARYLAND

Case No. _____423332V_____

Jury Trial Demanded

## Class Action Complaint and Demand for Jury Trial

1. Plaintiff, Jamal Sprye ("Plaintiff" or "Mr. Sprye"), individually and on behalf of all others similarly situated, sues Defendant, Ace Motor Acceptance Corp. ("Defendant" or "Ace") for damages and injunctive relief for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), the Maryland Telephone Consumer Protection Act, §§ 14-3201 *et seq.* of the Commercial Law Article ("MDTCPA"), and the Maryland Wiretapping Act, §§10-401 *et seq.* of the Courts Article ("Md. Wiretap Act").

### Introduction and Background

### TCPA and MDTCPA

2. Congress enacted the TCPA to free Americans from "robocalls" initiated by abusive and harassing "autodialers," among other things.

3. As described by the TCPA's Congressional sponsor, the calls prohibited by the TCPA are "the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at

1

RECEIVED

JUL 22 2016

Clerk of the Circuit Court
Montgomery County, Md.

night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991).

4.  Mr. Sprye faced precisely the kind of abusive telephone hounding that Congress designed the TCPA to prevent – Ace used an autodialer to place over a dozen calls to Mr. Sprye on his cellular telephone over several months, all without his "prior express consent" as required under the TCPA and the MDTCPA.

5.  Indeed, the Federal Communications Commission ("FCC"), charged with implementing the TCPA, recently confirmed that the "scourge" of robocalls continues to burden Americans like Mr. Sprye:

> Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission. The [TCPA] and our rules empower consumers to decide which robocalls and text messages they receive, with heightened protection to wireless consumers, for whom robocalls can be costly and particularly intrusive. ... With this Declaratory Ruling and Order, we act to preserve consumers' rights to stop unwanted robocalls, including both voice calls and texts, and thus respond to the many who have let us, other federal agencies, and states know about their frustration with robocalls.

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 2015 WL 4387780 (2015) (the "2015 FCC Ruling").

6.  The FCC also confirmed in its 2015 Ruling that it is the burden of the business making the robocall to prove that the subject of its robocalls provided, and did not revoke, "prior express consent" for such calls. *See* 2015 FCC Ruling ("we see no reason to shift the TCPA compliance burden onto consumers and affirm that they ***do not bear the burden of proving*** that a caller did not have prior express consent *for a particular call*.") (emphasis added).

7.  Plaintiff brings this lawsuit as a result of Ace's illegal actions in using an autodialer to call Plaintiff and the members of the Class and Subclass defined below on their cellular telephones without their prior express consent within the meaning of the TCPA and the Federal

2

Communications rules promulgated under the TCPA, at 47 CFR § 64.1200 (the "FCC Rules").

By violating the TCPA as implemented by the FCC Rules, Ace violated the MDTCPA as well.

*See* Md. Code Ann., Com. Law § 14-3201(2).

### Md. Wiretap Act

8.  In 1999, the Maryland Court of Appeals stated:

> The requirement of consent by *all* parties for the recording of a telephone conversation by a private individual has been a fundamental part of Maryland law since at least 1956, and the one attempt by the Legislature, in 1973, to modify that provision met with a veto in which the Governor expressed his deep concern that the "opportunity for unwarranted spying and intrusions on people's privacy authorized by this bill is frightening." See 1973 Md. Laws, Vol. II, at 1925. Under long-standing Maryland law, therefore, a party to a telephone conversation does not take the risk that another party, not acting as, or under the direction of, a government agent, will record and divulge the contents of the conversation, for, absent the prior consent of the party, such recording and divulging is clearly prohibited and, indeed, if done willfully, constitutes a criminal offense.

*Perry v. State*, 357 Md. 37, 61, 741 A.2d 1162, 1175 (1999) (emphasis in original). Indeed, as

illustrated in *Perry*, the public policy protecting Marylanders from surreptitious recording is so

strong that the Court of Appeals vacated a conviction where the death penalty was imposed to

see it vindicated. *Id.*

9.  Hence, Marylanders are familiar with the warnings at the beginning of most commercial

telephone calls, stating that the call may be recorded.

10. Contrary to the common practice and law, the calls that Mr. Sprye and members of the

class received from Ace contained no such warning, he gave no consent, and he had no

knowledge that his telephone calls with Ace were being recorded.

11. Plaintiff brings this lawsuit as a result of Ace's illegal actions in recording telephone calls

with the Plaintiff and the members of the Class and Subclass defined below without their consent

within the meaning of the Md. Wiretap Act.

## Parties

12. Plaintiff, Mr. Sprye, is an individual who is a citizen of the State of Maryland.

13. Defendant, Ace, is a North Carolina corporation that regularly provides sub-prime automobile loans to Maryland consumers, including consumers in Montgomery County.

## Jurisdiction and Venue

14. This Court has jurisdiction over this case pursuant to § 1-501 of the Courts Article, as the amount in controversy exceeds the jurisdiction of the district court, and Plaintiff seeks a jury trial and to represent a class of similarly situated persons

15. Venue is proper in this Court under § 6-201 of the Courts Article because Ace carries on a regular business in Montgomery County.

## The Telephone Consumer Protection Act of 1991

16. Congress enacted the TCPA to respond to consumer complaints regarding the proliferation of acts of invasive and harassing telephone calls to individuals by businesses.

17. The TCPA strictly regulates "autodialers," and prohibits the use of an autodialer to make any call to a wireless telephone number in the absence of an emergency situation or the prior express consent of the person called. *See* TCPA § 227(b)(1)(A)(iii).

18. The FCC has determined that such automated calls are a greater threat to Americans' privacy than live, human dialed calls, and that the automated calls can be costly and inconvenient – specifically finding that wireless customers are charged for these incoming calls.

19. The FCC has further confirmed that autodialed calls to a cellular telephone number by or on behalf of a creditor are only permitted if the calls are made with the "prior express consent" of the person called – and that such "prior express consent" exists only if "the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." Moreover, such prior express consent

4

may be revoked by the person called at any time and by any means – and consumers "do not bear the burden of proving that a caller did not have prior express consent for a particular call." 2015 FCC Ruling at 38.

20. Autodialers, according to the FCC, include systems which "have the capacity to dial random and sequential numbers" but do not have to have the "present ability to do so." As a result, TCPA plaintiffs need not demonstrate that "human intervention" was absent from the call-making process.

21. For violations of the TCPA, the violator is liable to pay up to $1,500 for every call in violation of the statute. *See* 47 U.S.C. § 227(b)(3).

## The Maryland Telephone Consumer Protection Act

22. Under the MDTCPA, "A person may not violate:... The Telephone Consumer Protection Act, 47 U.S.C. § 227, as implemented by the Federal Communications Commission in the Restrictions on Telemarketing and Telephone Solicitations Rule (47 C.F.R. Part 64, Subpart L)." § 14-3201 of the Commercial Law Article.

23. For any violation of the MDTCPA, the violator is liable to pay "(1) Reasonable attorney's fees; and (2) Damages in the amount of the greater of: (i) $500 for each violation; or (ii) Actual damages sustained as a result of the violation." Md. Code Ann., Com. Law § 14-3202.

## The Md. Wiretap Act

24. Under the Md. Wiretap Act, a person may not "Wilfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . ." § 10-402(a)(1) of the Commercial Law Article; *Miles v. State*, 365 Md. 488, 507, 781 A.2d 787, 798 (2001).

25. Any person whose wire, oral or electronic communication was intercepted, disclosed or used in violation of the Md. Wiretap Act is entitled to recover: (1) actual damages but not less

than $100 a day for each violation or $1,000, whichever is higher, (2) punitive damages, and (3) reasonable attorney's fees and costs of litigation reasonably incurred. § 10-410(a) of the Commercial Law Article.

## Named Plaintiff's Experience

26. Mr. Sprye is a "person" as defined by 47 U.S.C. § 153(39).

27. Mr. Sprye, without his knowledge, was listed by his sister as a reference on a car loan application. Accordingly, Mr. Sprye never signed any paperwork provided by Ace or otherwise agreed to be called on his cellular telephone or to have his conversations recorded.

28. When his sister fell behind on her payments, Ace started calling Mr. Sprye.   A representative of Ace spoke with Mr. Sprye on the following occasions:

> 2/19/2013 at 12:59 PM
> 7/23/2013 at 9:24 AM
> 8/17/2013 at 11:39 AM
> 9/14/2013 at 9:16 AM
> 9/19/2013 at 5:26 PM
> 10/2/2013 at 5:16 PM
> 10/10/2013 at 3:29 PM
> 10/25/2013 at 8:17 AM
> 1/8/2014 at 7:54 PM
> 1/31/2014 at 10:41 AM
> 4/10/2014 at 4:22 PM
> 5/15/2014 at 4:54 PM

Ace placed at least one additional telephone call to Mr. Sprye's cellular telephone that went unanswered, on 7/27/2013 at 11:21 AM.

29. Mr. Sprye did not know that Ace was not located in Maryland; indeed, it was his understanding from his sister that she had purchased her car from Ace, so he thought Ace was located in Maryland.

30. Mr. Sprye did not know that the calls were not coming from Maryland, but instead were coming through a Voice over Internet Protocol ("VoIP") telephone system provided to Ace by

TCN, Inc. The TCN system routes phone calls through the internet. TCN VoIP calls are routed through its data centers in Los Angeles, CA, Saint George, UT, Toronto, Canada, the United Kingdom and Australia. Each of those servers backs up the data from all of the other servers, so effectively, the VoIP calls run through all of those servers at once.

31. Ace automatically has all calls made from its collections call centers recorded on the TCN servers, and later downloads the recordings. Ace's employees do not even have the ability to turn off the recording. Ace does not provide notice to recipients that the calls will be recorded, and does not obtain consent from the recipients of such calls, such as Mr. Sprye.

32. Mr. Sprye was in Maryland when he received the calls, on a cellular telephone with a Maryland area code.

33. Without limitation, Ace used an autodialer to call Mr. Sprye's cellular telephone without his prior express consent, and recorded each telephone call, in violation of the TCPA, the MDTCPA, and the Md. Wiretap Act.

34. Ace is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

35. All telephone contact by Ace to Mr. Sprye on his cellular telephone occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1).

36. The telephone number that Ace called in order to contact Mr. Sprye, made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii). In particular, Ace called a telephone number assigned to Mr. Sprye's cellular telephone which used T-Mobile service.

37. Mr. Sprye did not provide "prior express consent" allowing Ace to place telephone calls to Mr. Sprye's cellular telephone placed by an "automatic telephone dialing system" within the meaning of 47 U.S.C. § 227(b)(1)(A).

38. Ace's telephone calls to Plaintiff's cellular phone were not "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

39. Ace's telephone calls to Mr. Sprye's cellular telephone placed by an "automatic telephone dialing system" for non-emergency purposes and in the absence of Mr. Sprye's prior express consent violated 47 U.S.C. § 227(b)(1)(A).

40. Under the TCPA and pursuant to the FCC Rulings, the burden is on Ace to demonstrate that Mr. Sprye provided express consent within the meaning of the statute, and that he did not revoke that express consent.

41. Among other things, because Mr. Sprye had no previous communication or relationship with Ace, and Ace did not maintain proper business records tracking "prior express consent," including revocation of "prior express consent," Ace cannot show that Mr. Sprye or the members of the Class or Subclass provided "prior express consent" to receive its robocalls.

### Class Action Allegations

42. Mr. Sprye brings this action on behalf of himself and all other persons similarly situated.

43. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

Class 1 (TCPA Class)

All persons within the United States who, within the four years preceding the date of filing this Complaint 1) received a non-emergency telephone call from Ace 2) to a cellular telephone 3) through the use of an automatic telephone dialing system.

Class 1 Subclass (MDTCPA Subclass)

All persons within the State of Maryland who, within the three years preceding the date of filing this Complaint 1) received a non-emergency telephone call from Ace 2) to a cellular telephone 3) through the use of an automatic telephone dialing system.

Excluded from the Class and Subclass are Ace and any entities in which Ace has a controlling interest, Ace's agents and employees, any Judge to whom this action is assigned and any member of such

8

Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

Class 2 (Md. Wiretap Act Class)

All persons within the State of Maryland who, within the three years preceding the date of filing this Complaint 1) received a telephone call from Ace's collections department 2) that was recorded by Ace.

Excluded from the Class are Ace and any entities in which Ace has a controlling interest, Ace's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

44. Plaintiff does not know the exact number of members in the Classes or Subclass, but Plaintiff reasonably believes that the members of the Classes and Subclass number in the hundreds or thousands.

45. Plaintiff and all members of the Classes and Subclass have been harmed by Ace's acts, and seek injunctive relief and money damages.

46. The joinder of all Classes and Subclass members is impracticable within the meaning of Fed. R. Civ. P. 23(a)(1) due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Classes and Subclass can be identified easily through records maintained by Ace.

47. There are well defined, virtually identical, questions of law and fact affecting all Classes and Subclass members, within the meaning of Fed. R. Civ. P. 23(a)(2). The questions of law and fact involving the Classes and Subclass claims predominate over questions which may affect individual Classes and Subclass members. Those common questions of law and fact include, but are not limited to, the following:

a. Whether Ace made non-emergency calls to Plaintiff and the Classes and Subclass members' cellular telephones using an automatic telephone dialing system;

b. Whether Ace can meet its burden of showing it obtained prior express consent (*i.e.* consent that is clearly and unmistakably stated) during the transaction that resulted in the debt owed, to make such calls, and that any such consent was not revoked;

c. Whether Ace's conduct was knowing and/or willful;

d. Whether Ace is liable for damages, and the amount of such damages;

e. Whether Ace should be enjoined from engaging in such conduct in the future;

f. Whether Ace records all outgoing calls from its collection department; and

g. Whether Ace gives notice that calls will be recorded and obtains consent to record such calls.

48. The claims of the Named Plaintiff are typical of the claims of the respective members of the Classes and Subclass within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of similar facts constituting Ace's wrongful conduct.   In particular, as a person who received numerous and repeated telephone calls using an automatic telephone dialing system or an artificial or prerecorded voice, without his prior express consent within the meaning of the TCPA and Rules, Plaintiff asserts claims that are typical of each Class 1 and Subclass member. Moreover, as a person who received telephone calls that were recorded without warning and without his consent, Plaintiff asserts claims that are typical of each Class 2 member. Plaintiff will fairly and adequately represent and protect the interests of the Classes and Subclass, and has no interests which are antagonistic to any member of the Classes or Subclass.

49. The named Plaintiff is an adequate representative of the Classes and Subclass within the meaning of Fed. R. Civ. P. 23(a)(4), and is prepared to represent the Classes and Subclass.

10

Furthermore, the named Plaintiff has secured counsel experienced in class actions, who foresee little difficulty in the management of this case as a class action.

50. The prosecution of separate actions by individual members of the Classes and Subclass would create a risk of establishing incompatible standards of conduct for Ace within the meaning of Fed. R. Civ. P. 23(b)(1)(A).

51. Ace has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole, within the meaning of Fed. R. Civ. P. 23(b)(2). Among other things, Ace has called each Class 1 and Subclass member on their cellular telephones (or all telephones with regard to members of Class 2) using an autodialer without their prior express consent, recorded such calls without warning and the consent of the recipients, and injunctive and declaratory relief is appropriate to stop that unlawful activity.

52. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Classes and Subclass, and a class action is the superior method for fair and efficient adjudication of the controversy within the meaning of Fed. R. Civ. P. 23(b)(3). The likelihood that individual members of the Classes and Subclass will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Class wide relief is essential to compel Ace to comply with the TCPA, the MDTCPA, and the Md. Wiretap Act. The interest of class members in individually controlling the prosecution of separate claims against Ace is small because the statutory damages in an individual action for violation of the TCPA, MDTCPA, and Md. Wiretap Act are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated, are all recorded, and the Class and Subclass members, by definition, did

11

not provide the prior express consent required under the statute to authorize calls to their cellular telephones, or record their telephone conversations.

## Causes of Action

### Count One
### Knowing and/or Willful Violations of the Telephone Consumer Protection Act
### 47 U.S.C. §§ 227 *et seq.*

53. Plaintiff incorporates the foregoing paragraphs as if fully set forth.

54. Ace's acts, described in this Complaint, constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the provisions of 47 U.S.C. §§ 227 *et seq.* cited in this Complaint.

55. As a result of Ace's knowing and/or willful violations of 47 U.S.C. §§ 227 *et seq.*, Plaintiff and each member of Class 1 are entitled to treble damages of up to $1,500.00 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

56. Plaintiff and Class 1 members are also entitled to an award of attorney's fees and costs.

### Count Two
### Violation of the Telephone Consumer Protection Act
### 47 U.S.C. §§ 227 *et seq.*

57. Plaintiff incorporates the foregoing paragraphs as if fully set forth.

58. Ace's acts, described in this Complaint, constitute numerous and multiple violations of the TCPA, including but not limited to each of the provisions of 47 U.S.C. §§ 227 *et seq.* cited in this Complaint.

59. As a result of Ace's violations of 47 U.S.C. §§ 227 *et seq.*, Plaintiff and each member of Class 1 are entitled to $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

60. Plaintiff and Class 1 members are also entitled to an award of attorney's fees and costs.

12

## Count Three
## Violation of the Maryland Telephone Consumer Protection Act
## Md. Code Ann., Com. Law §§ § 14-3201 *et seq.*

61. Plaintiff incorporates the foregoing paragraphs as if fully set forth.

62. Ace's acts, described in this Complaint, constitute numerous and multiple violations of the TCPA as implemented by the Federal Communications Commission in the Restrictions on Telemarketing and Telephone Solicitations Rule (47 C.F.R. Part 64, Subpart L).

63. As a result of Ace's violations of the TCPA as implemented by the Federal Communications Commission in the Restrictions on Telemarketing and Telephone Solicitations Rule (47 C.F.R. Part 64, Subpart L), as described above, Ace violated the MDTCPA, § 14-3201(2) of the Commercial Law Article.

64. Plaintiff and each member of the Subclass are entitled to $500.00 in statutory damages for each and every call in violation of the of the MDTCPA, pursuant to § 14-3202(b)(2)(i) of the Commercial Law Article.

65. Plaintiff and Subclass members are also entitled to an award of attorney's fees, pursuant to pursuant to Md. Code Ann., Com. Law § 14-3202(b)(1), and costs.

## Count Four
## Violation of the Maryland Wiretapping and Electronic Surveillance Act
## Md. Comm. Law Art. §§ 10-401 *et seq.*

66. Plaintiff incorporates the foregoing paragraphs as if fully set forth.

67. Ace's actions, described in this Complaint, constitute numerous and multiple violations of the Md. Wiretap Act.

68. As a result of Ace's violations of the Md. Wiretap Act, Plaintiff and each member of the Subclass are entitled to actual damages but no less than liquidated damages of $100 per day for each violation of the Md. Wiretap Act, or $1,000 whichever is greater.

69. Plaintiff and Class 2 members are also entitled to an award of punitive damages, and attorney's fees and costs, pursuant to § 10-410(a)(2) and (3) of the Commercial Law Article.

WHEREFORE, Plaintiff respectfully requests the following relief against Ace:

A. For Plaintiff and all Class 1 members, treble damages of up to $1,500 for each and every call that violated the TCPA, pursuant to 47 U.S.C. § 227(b)(3);

B. For Plaintiff and all Class 1 members, statutory damages of $500.00 for each and every call that violated the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B);

C. For Plaintiff and all Subclass members, statutory damages of $500.00 for each and every call that violated the MDTCPA, pursuant to Md. Code Ann., Com. Law § 14-3202(b)(2)(i);

D. For Plaintiff and all Class 2 members, actual damages but no less that $100 per day for each violation of the Md. Wiretap Act, or $1,000, whichever is greater;

E. For Plaintiff and all Class 2 members, punitive damages;

F. An award of attorney's fees and costs to counsel for Plaintiff and the Classes and Subclass;

G. An order certifying this action as a class action pursuant to Md. Rule 2-231(c); and

H. Such other and further relief as the nature of this case may require.

Respectfully submitted,

Martin E. Wolf
mwolf@GWCfirm.com
Richard S. Gordon
rgordon@GWCfirm.com
GORDON, WOLF & CARNEY, CHTD.
102 W. Pennsylvania Ave., Suite 402
Towson, Maryland 21204
Tel.     (410) 825-2300
Fax.    (410) 825-0066

Joseph Mack
jmack@civiljusticenetwork.org
CIVIL JUSTICE, INC.
520 W. Fayette Street, Suite 410
Baltimore, MD 21201
Tel.     (410) 706-0174
Fax.    (410) 706-3196

**Attorneys for Named Plaintiff the
Classes and Subclass**

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Martin E. Wolf